# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**September 13, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **W.M. and D.S.**

**No. 19-0240** (Kanawha County 2018-JA-600 and 2018-JA-601)

## MEMORANDUM DECISION

Petitioner Grandmother B.G., by counsel Jason S. Lord, appeals the Circuit Court of Kanawha County's February 7, 2019, order terminating her parental and guardianship rights to W.M. and D.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Jennifer N. Taylor, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for an improvement period.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2018, the DHHR filed a child abuse and neglect petition against petitioner, the grandmother and guardian of W.M. and D.S.[3] The DHHR alleged severe drug use in the home. Specifically, petitioner had recently been arrested for selling heroin to a confidential informant and was charged with felony distribution of heroin. A Child Protective Services ("CPS") worker interviewed petitioner, who admitted to buying the drug Klonopin "illegally off the street." Petitioner also admitted to snorting heroin, which she claimed eased her severe medical issues such as emphysema and chronic obstructive pulmonary disease. Petitioner stated that her friends brought the drugs to her house. She denied being addicted to heroin, however.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner does not assign as error the termination of her parental and guardianship rights.

[3]Petitioner was granted guardianship of the children as a result of child abuse and neglect proceedings against their mother, who abused drugs.

1

The circuit court held an adjudicatory hearing in November of 2018. Petitioner requested a preadjudicatory improvement period. While the circuit court noted that petitioner's drug screens were negative, it ultimately denied her request based upon her pending criminal charges. Petitioner testified and denied abusing drugs. She further denied ever admitting to the CPS worker that she abused drugs or allowed drug abusers in her home. Regarding a recent search of her house, petitioner asserted that officers only found broken scales, but no drugs. The DHHR, however, presented a receipt of the items taken from petitioner's home, which included a working scale, Suboxone, money, and suspected heroin. Petitioner admitted to her signature on the receipt but testified that she "did not know where the heroin came from." After hearing evidence, the circuit court found that petitioner accepted no responsibility for her actions and further found her testimony to be incredible. The circuit court adjudicated petitioner as an abusing parent, finding that she exposed the children to drugs and drug use, was arrested for selling heroin to a confidential informant, and admitted to prior drug use.

In January of 2019, the circuit court held a dispositional hearing. The DHHR indicated that it would be amenable to granting petitioner an improvement period. However, petitioner's testimony demonstrated that she failed to acknowledge the conditions of abuse and neglect. When asked whether petitioner realized that her actions led to the abuse and neglect proceedings, petitioner responded "[a] lot of them allegations wasn't true." Petitioner described herself as a "care-giving person" who "was helping maybe the wrong type of people." Indeed, when asked what actions she was specifically taking responsibility for, petitioner responded "I guess the company I keep." Evidence was presented that petitioner regularly submitted to drug screens and produced negative results, but missed three screens which were deemed positive. After hearing evidence, the circuit court denied petitioner's request for an improvement period based upon her failure to acknowledge the conditions of abuse and neglect that led to the petition's filing. The circuit court found that petitioner "did not fully comply with services offered, missed drug screens and has demonstrated no recognition of the issues or the purpose of complying with services offered by the [DHHR]." Accordingly, the circuit court terminated petitioner's "parental or guardianship rights" based upon findings that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. It is from the February 7, 2019, dispositional order that petitioner appeals.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing

---

[4]The mother's parental rights were also terminated during the proceedings below. The fathers' proceedings are still ongoing and their parental rights remain intact. The children are placed in foster homes. Should the children not be reunified with their fathers, the permanency plan is adoption by their foster families with a concurrent permanency plan of guardianship.

court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her request for an improvement period. According to petitioner, she successfully participated in supervised visitation and produced several negative drug screens. Further, petitioner accepted responsibility for having disreputable people in her home who presented a danger to the children. As such, she avers it was error to deny her the opportunity to address her parental shortcomings. We find petitioner's argument to be without merit.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . .").

Having reviewed the record, we find that the circuit court did not abuse its discretion in denying petitioner's request for an improvement period. Petitioner was adjudicated largely based upon her drug abuse and criminal actions. Indeed, testimony established that petitioner initially admitted to illegally purchasing drugs and abusing heroin while caring for the children. However, at no point thereafter did petitioner accept responsibility for her actions. At the adjudicatory hearing, petitioner stated that she did not know how police officers found heroin in her home, denied her prior statements to the CPS worker, and denied abusing drugs. At the dispositional hearing, petitioner again denied the allegations contained in the petition and only took responsibility for "the company" she kept. Indeed, on appeal, petitioner asserts that she accepted responsibility for allowing disreputable people in her home. However, this fails to adequately encompass the abuse and neglect perpetrated by petitioner. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Because petitioner failed to acknowledge her severe drug abuse and criminal actions, an improvement period would have been an exercise in futility at

the children's expense. Accordingly, we find no error in the circuit court's decision to deny petitioner the same.

Finally, because proceedings regarding the children's fathers remain ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 7, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  September 13, 2019


**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

5